## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

KENNETH EUGENE CARTER,

     **Plaintiff,**

v.                                                                    **Case No. 2:17-cv-03743**

DIVISION OF CORRECTIONS,
WARDEN DAVID BALLARD, and
TOM CHANDLER, CFCI,

     **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is a Motion to Dismiss filed by the West Virginia Division of Corrections ("WVDOC") and Tom Chandler ("Chandler") (ECF No. 27). This matter is assigned to the Honorable John T. Copenhaver, Jr., and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND THE PLAINTIFF'S CLAIM FOR RELIEF

The plaintiff ordered a pair of prescription sunglasses from an internet website and had payment for the same authorized by voucher from his inmate account at the Mount Olive Correctional Complex ("MOCC"). However, when the sunglasses arrived at the prison, by mail, on June 29, 2017, defendant Chandler issued a "Package Refusal Notice" stating that the package would not be delivered to the plaintiff because it contained an "unapproved item" and "must be transitional lens." (ECF No. 2, Ex. G). The package containing the sunglasses was not delivered to the plaintiff.

The Complaint further appears to allege that defendant Chandler's actions "neglected" or ignored the plaintiff's existing vision conditions and the volume of his prescription, which he asserts place him at greater risk of damage to his vision if his eyes are not protected from ultraviolet rays. (*Id.* at 2). The Complaint further alleges that defendant Chandler has withheld the delivery of the plaintiff's sunglasses "to harass or achieve a tactical advantage, due to prior civil complaint of wrongdoings filed in another matter." (ECF No. 1 at 2). The plaintiff's Complaint and Affidavit in support allege that the defendants violated the Fourth and Eighth Amendments of the United States Constitution when they "seized possession of prescription eye wear touching basis of cruel and unusual punishment to deny medical need." (ECF No. 2 at 2). The Complaint seeks an Order enjoining the defendants from "the disposal or the exercise return of prescription eyeglasses that are non-refundable . . . ." (ECF No. 1 at 1).

On November 16, 2017, the plaintiff filed an amendment to his Complaint alleging that, as a result of the denial of the subject prescription sunglasses, his vision prescription deteriorated from -5.5o in each eye to -5.75. (ECF No. 20 at 2). The plaintiff contends that this is demonstrative of the defendants' deliberate indifference to his serious medical need in violation of the Eighth Amendment. (*Id.*)

By Orders entered on November 2, 2017, and November 15, 2017, the presiding District Judge issued a Temporary Restraining Order, which the defendants agreed to extend during the pendency of this litigation. (ECF Nos. 16 and 19).

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a

case should be dismissed for failure to state a claim upon which relief can be granted if,

viewing the well-pleaded factual allegations in the complaint as true and in the light most

favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to

relief that is plausible on its face." While the complaint need not assert "detailed factual

allegations," it must contain "more than labels and conclusions" or a "formulaic recitation

of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129

S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual allegations
> in the complaint as true, we "are not bound to accept as true a legal
> conclusion couched as a factual allegation" (internal quotation marks
> omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff
> armed with nothing more than conclusions. Second, only a complaint that
> states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a complaint, they
> must be supported by factual allegations. When there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

The defendants interpret the plaintiff's Complaint to be alleging that the

defendants have been deliberately indifferent to his serious medical needs and have

subjected him to an unreasonable seizure of his property. The defendants contend that

the plaintiff's Complaint fails to state a plausible claim under the Fourth Amendment for unlawful search and seizure or under the Eighth Amendment for deliberate indifference to a serious medical need. The defendants further assert that the Complaint fails to state a plausible retaliation claim against defendant Chandler. The undersigned will address each claim in turn.

### A.    The WVDOC and the other defendants in their official capacity are immune from a suit for damages in federal court.

The plaintiff's initial Complaint did not seek monetary damages from the defendants. However, his Motion to Amend seeks recovery of costs, fees, and expenses and "detriment damages that lead to physical harm, pain and loss of strength to eyesight." (ECF No. 20 at 3-4). To the extent that the plaintiff is asserting claims against the WVDOC and the other defendants in their official capacities, the defendants assert that any claims for monetary damages are barred by the Eleventh Amendment to the United States Constitution. Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). Moreover, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State nor its

4

officials acting in their official capacities are "persons" under section 1983.  Thus, the

undersigned proposes that the presiding District Judge **FIND** that the plaintiff cannot

state any plausible claims for relief against the WVDOC or the other defendants in their

official capacities.

> **B.**    **The Complaint fails to state a plausible Fourth Amendment claim.**

The defendants' Memorandum of Law notes that requests for special packages are

governed by Mount Olive Correctional Complex ("MOCC") Operational Procedure #4.03,

which requires that the contents of all special packages comply with current policies and

procedures governing approved property and contraband.  (ECF No. 28 at 2 and ECF No.

27, Ex. 1 at 10).

WVDOC Policy Directive 400.03 lists approved property to include two pairs of

"prescription glasses" "Limit one (1) State issue and (1) personal purchase – tint restricted

on personal purchase to 5% (photo lenses only)."   (ECF No. 27, Ex. 2 at 13, 27).

Additionally, the policy directive provides that "sunglasses" are approved as non-

prescription only.  (*Id.* at 14, 28).  The defendants further note that the policy directive

does not permit the Warden to amend or add additional items to the list of approved

property.  (*Id.* at 5).  Both of the policies and procedures require that unauthorized

property must be picked up or shipped out from the facility within 30 calendar days.  (ECF

No. 27, Ex. 1 at 10; Ex. 2 at 6).

The defendants' Memorandum of Law further asserts that the plaintiff's special

package containing the prescription sunglasses did not conform to Policy Directive

400.03's restrictions on prescription sunglasses and that the plaintiff ordered lenses that

were not "transitions"/polarized lenses and had requested the darkest lens tint available.

(ECF No. 28 at 3).  Thus, when the package arrived at MOCC, defendant Chandler issued a package refusal notice as containing an unapproved item.  The refusal notice explained that the item was being refused because the glasses did not have transition lenses.  (ECF No. 28 at 3; ECF No. 2, Ex. G).

The plaintiff filed a grievance concerning the seizure of the sunglasses and was advised by the Warden that "Prescription sunglasses must have transition lenses.  The glasses that came in are not transitions.  Send them out of the facility."  (ECF No. 2, Ex. H).  As noted by the defendants, the grievance did not address the denial of access to medical professionals regarding his vision or that his treatment required prescription glasses without photo/transitions lenses or a tint greater than 5% was medically necessary.  (ECF No. 28 at 3).

As noted by the defendants, it is well-settled that a prisoner has no cognizable expectation of privacy in his cell, and "this applies equally to an inmate's incoming mail." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *Blaisdell v. Dep't of Pub. Safety*, No. 14-00433, 2014 WL 5581032, *6 (D. Haw. Oct. 31, 2014); *see also Villafana v. Clarke*, No. 3:17CV512, 2018 WL 1569489, *4 (E.D. Va. Mar. 30, 2018) (listing cases supporting no Fourth Amendment protection of incoming non-privileged mail).  Thus, the defendants maintain that a prisoner's property, including his incoming mail, may be searched for contraband and be seized as such without violating the Fourth Amendment.  (ECF No. 28 at 8).

The defendants further assert that, pursuant to the policies and procedures in place at MOCC, an inmate's incoming packages may be similarly searched and seized for contraband without violating any expectation of privacy.  Their Memorandum of Law asserts:

6

> The plaintiff does not allege facts that defendant Chandler's refusal of package based upon the lack of transition lenses or the Warden/Administrator's answer to his grievance stating that the prescription sunglasses were an unapproved item because they lacked transition lenses, were inconsistent with enforceable policy or procedure regarding allowable property . . . Here, policy and procedure affirm that the plaintiff does not have a reasonable expectation of privacy in his incoming special package not being searched by prison officials.  An inmate, moreover, does not have a recognizable property interest in an item, which prison policy and procedure do not allow him to have.  *See Wenzler v. Warden of G.R.C.C.*, 94[9] F. Supp. 399 (E.D. Va. 1996); *State ex rel. Anstey v. Davis*, 203 W. Va. 538, 509 S.E.2d 57[9] (1998).

(ECF No. 28 at 9).   Consequently, the defendants assert that the plaintiff's Complaint fails to state a plausible claim for relief under the Fourth Amendment based upon the search and seizure of his package containing the prescription sunglasses, which, they assert, was in accordance with the prison's policies and procedures.  (*Id.*)

The plaintiff's Response to the Motion to Dismiss attempts to shift the focus from Policy Directive 400.03 and Operational Procedure #4.03 to Operational Procedure #1.17 governing "Inmate Funds" and specifically the section governing approval of vouchers by authorized staff.  (ECF No. 31, Attach. 1, Ex. A at 2, § C).  Thus, the plaintiff appears to be arguing that, if the eyeglasses he ordered were not approved property, the voucher he completed for payment for such glasses should not have been approved.  Clearly, however, defendant Chandler was not responsible for approval of the subject voucher.  The plaintiff's Response further contends, for the first time in these proceedings and without any support therefore, that inmates who do not need corrective lenses are permitted to obtain dark sunglasses with UV protection and tint darker than those for prescription glasses.  (ECF No. 31 at 3-4).

The defendants' Reply correctly contends that the plaintiff has not refuted the defendants' argument that he cannot state a plausible Fourth Amendment claim based

upon the seizure of his incoming package containing the non-compliant prescription sunglasses.

The plaintiff's allegations demonstrate that defendant Chandler acted in accordance with Policy Directive 511.00 when he seized the plaintiff's package containing the prescription sunglasses and issued the package refusal notice. Taking the allegations in the plaintiff's Complaint as true, the Complaint fails to establish a plausible violation of the Fourth Amendment. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a claim upon which relief can be granted with respect to the plaintiff's Fourth Amendment claim.

### C. The Complaint fails to state a plausible Eighth Amendment claim.

The plaintiff's Complaint documents also allege that the defendants' conduct violated his Eighth Amendment rights. In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.,* at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "sufficiently culpable state of mind;'" that is, a "deliberate indifference to inmate health

or safety." *Id.*, at 834. (Citations omitted.)  The Supreme Court rejected an argument that

an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an excessive risk to
> inmate health or safety; the official must both be aware of facts from which
> the inference could be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference.

*Id.,* at 837.

The plaintiff's Complaint, even when read liberally, contains insufficient

allegations that the defendants have exhibited a deliberate indifference to the plaintiff's

serious medical needs, or interfered with his medical treatment, in violation of his Eighth

Amendment rights.  "In order to state a cognizable claim for denial of medical care under

the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate

indifference to a serious medical need."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"Serious medical needs" are those which have been diagnosed by a physician as

mandating treatment or that are so obvious that even a lay person would easily recognize

the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d

203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or
> reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).
> A defendant acts recklessly by disregarding a substantial risk of danger that
> is either known to the defendant or which would be apparent to a reasonable
> person in the defendant's position.  *See id.*  Nevertheless, mere negligence
> or malpractice does not violate the Eighth Amendment.  *See Estelle*, 429
> U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need by

correctional officials and health care providers is very high.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). For example, in *Sosebee*, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct <u>might</u> establish deliberate indifference to a serious medical need.

In *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye. *Id.* at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. *Id.* The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. *See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

The defendants' Memorandum of Law asserts:

> The plaintiff's allegations against defendant Chandler are that a pair of prescription sunglasses sent by special package were inspected by Chandler and that he refused to have the sunglasses delivered to the plaintiff on the stated/written grounds that the prescription sunglasses were not transition

10

lenses and, thus, not authorized under policy. The Complaint does not allege that Chandler had any knowledge of the severity of the plaintiff's medical condition as it related to his vision. The Complaint, in fact, states that Chandler was not an Optometrist and had no expertise in this field of medical care. (Doc. 2 p. 2 of 3). The allegations do not set forth, either directly or by inference, that Chandler was ever put on notice that the plaintiff's prescription sunglasses were anything but regular prescription sunglasses, which were simply intended to correct the plaintiff's ordinary vision problems. See *Thomas v. Owens*, 345 Fed. Appx. 892 (5th Cir. 2009) (finding inmate's complaint that he "'cannot see well' . . . establishes no substantial harm or that officials had a subjective awareness of such harm" by denying him glasses); *Bethel v. Smith*, 2015 WL 2256581 (E.D. Va. 2015). More importantly, the allegations do not set forth, either directly or by inference, that Chandler was ever put on notice that the plaintiff would not have been already using/wearing an adequate pair of prescription glasses or that medical staff at the facility had no alternative glasses or treatments available, pending the arrival of prescription sunglasses sent by 39 Dollar Glasses.com. Any person in Chandler's position would reasonably assume that, if prescription sunglasses were absolutely essential to the plaintiff's serious medical needs, the plaintiff would not be left without such glasses or other vision treatment pending his order for glasses from an outside vendor.

The allegations also do [not?] set forward facts which would show that the [WVDOC] would have had any knowledge that the deprivation of the one pair of prescription sunglasses would place the plaintiff at a "substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain." The Complaint does not allege that the plaintiff was denied access to medical professionals regarding his vision or that [MOCC] refused to allow the plaintiff to wear alternative glasses or to have other treatment for the plaintiff's vision needs, but for the prescription sunglasses sent in by 39 Dollar Glasses.com. A review of the plaintiff's prescription (Doc 2-4, p. 1 of 2), which was attached to the plaintiff's purchase order, indicates -5.50 diopters for both eyes, but no particular condition that indicates that the prescription sunglasses were for anything other than for the plaintiff's myopia [footnote omitted]. The plaintiff's pleadings, including his Motion to Amend with Discovery (Doc. 20), state[] legal conclusions regarding the defendants' deliberate indifferen[ce], but do not state any specific allegations regarding the defendants' knowledge of the plaintiff's specific serious vision needs. Boilerplate allegations, such as "Clearly, the action was not in accord with Plaintiff's medical needs," are insufficient to support a valid legal claim.

(ECF No. 28 at 6-8).

The plaintiff's Response essentially asserts that Policy Directive 400.03 "fails to care for the safety of those with faulty vision or U.V. protection to prevent any further damage to sight because prescription sunglass wear is prohibited." (ECF No. 31 at 4). In support of this assertion, the plaintiff's Complaint, as amended, alleges that his vision slightly deteriorated during the period he has been denied the subject sunglasses. (ECF No. 20; ECF No. 31 at 8). His Response further asserts:

> I was not sentenced to a deliberate lost [sic; loss] of vision by an act of disfavoring or the loss to safety of my funds that are suppose[d] to be secure till [sic; until] an item is approved, which, as an unfavorable condition failed to satisfy any hopes or expections [sic; expectations] of care to one's vision, is a breach of duty (for furtherance described Affidavit, See Docket No. 2).

(*Id.*)

The defendants' Reply contends that "there is no factual allegation that plausibly supports the conclusion that the WVDOC or Tom Chandler knew of, or disregarded, an excessive risk to inmate health or safety in connection with the allegations that the Plaintiff is making." (ECF No. 34 at 2). Rather, the defendants assert that defendant Chandler was simply following written policy when he concluded that the prescription sunglasses at issue were unauthorized property and that the plaintiff has not plausibly alleged that Chandler or the WVDOC had the requisite knowledge of any risk to the plaintiff's health or safety if the sunglasses were disallowed. (*Id.*) Thus, the defendants assert that the plaintiff cannot establish the subjective prong of the deliberate indifference standard.

The defendants further assert that the plaintiff's claims in this matter are similar to those in *Marron v. Miller*, No. 7:13CV00338, 2014 WL 2879745, 2014 U.S. Dist. LEXIS 86629 (W.D. Va. June 24, 2014), *aff'd*, 587 F. App'x 69 (4th Cir. 2014). In *Marron*, the district court dismissed both Fourth and Eighth Amendment claims filed by a prisoner

whose sunglasses had been confiscated as contraband.  The defendants' Reply contends:

> In *Marron*, the District Court also dismissed the inmate's Eighth Amendment claim alleging that Defendants interfered with his medical treatment by confiscating the sunglasses.  The Court found that Marron "fails to demonstrate that these defendants knew that their actions posed a substantial risk of harm."  *Marron*, 2014 U.S. LEXIS 86629 at *12.  In the present matter, Mr. Carter simply fails to allege any plausible basis to conclude that the defendants had knowledge of a risk of harm to him when the sunglasses were disallowed.  As a result, his Eighth Amendment claim should be dismissed.

(ECF No. 34 at 3).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible claim under the Eighth Amendment for deliberate indifference to a serious medical need.  At most, the plaintiff's allegations would support nothing more than a claim of negligence, which does not rise to the level of an actionable constitutional claim.

### D.    The Complaint fails to state a plausible retaliation claim.

The defendants' Motion to Dismiss also asserts that the plaintiff's Complaint fails to allege a plausible claim against defendant Chandler based upon the alleged retaliatory seizure of the prescription sunglasses.  Specifically, the defendant's Memorandum of Law states:

> The plaintiff's allegations of retaliation are simply that he had filed a previous civil action involving defendant Chandler and the West Virginia Division of Corrections, and he was denied the prescription sunglasses as retaliation against his having filed a prior civil action.  Bare allegations of retaliation are insufficient.  *Adams v. Rice*, 40 F.2d 72 (4th Cir. 1994); *Hunter v. Angelone*, 2002 WL 32512729 (W.D. Va. 2002) (allegations that plaintiff received three disciplinary charges in retaliation for filing a lawsuit insufficient to state claim for retaliation).

\* \* \*

> In the present pleadings, there are no alleged facts, which would show that the defendants did anything other than seize the prescription

13

sunglasses because they were no photo/transition lenses. The plaintiff has not alleged that the prescription sunglasses were not an "unapproved" item under existing policy or that he was entitled to have the defendants ignore policy regarding "unapproved" property, because he had earlier filed a civil action against the defendants. The plaintiff, moreover, has not alleged facts which show that the defendants' "retaliation" has actually harmed or impeded his ability to engage in the filing of civil actions.

(ECF No. 28 at 9-10).

The plaintiff's Response to the Motion to Dismiss fails to address his retaliation claim. (ECF No. 31). The defendant's Reply notes this and asserts that the plaintiff's bare allegations of retaliation are insufficient to state a plausible claim for relief. (ECF No. 34 at 6).

To establish a claim of retaliation under section 1983, an inmate plaintiff must allege facts showing that the alleged retaliatory action either violated a constitutional right or "constitute[d] punishment for [his] exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). However, claims of retaliation by inmates are often viewed with skepticism. *Cochran*, 73 F.3d at 1317.

In order to sufficiently state a retaliation claim, a plaintiff must establish that (1) he engaged in constitutionally protected activity; (2) the defendants took some adverse action that would deter a person of ordinary firmness from engaging in that conduct; and (3) there was a causal connection between the protected activity and the defendants' conduct. *Hendrick v. Bishop*, No. 14-cv-2544, 2016 WL 1060212 (D. Md., Mar. 14, 2016) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). However, not all retaliatory conduct is actionable. *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995). A plaintiff seeking to recover for retaliation must show more than a "*de minimis* inconvenience" to the exercise of his rights to establish the

14

adverse action element. *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993). "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *Id.* at 785; *see also Snodgrass v. Gilbert*, No. 7:16-cv-00091, 2017 WL 1049582, *16 (W.D. Va. Mar. 17, 2017). Retaliation is often difficult to prove by direct evidence, and conclusory allegations of retaliatory motive that are unsupported by material facts are insufficient to state a claim under section 1983. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).

Even liberally construing the plaintiff's conclusory retaliation allegations to be alleging that he engaged in constitutionally protected activity because he filed a prior legal action that involved defendant Chandler, he has not sufficiently alleged that he suffered any impairment of his rights from Chandler's conduct or that there is a sufficient causal connection between the prior lawsuit and Chandler's actions herein. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible retaliation claim upon which relief can be granted.

### E.    The plaintiff's request for injunctive relief should be denied.

Because the Complaint fails to state any plausible claim upon which relief can be granted, there is no basis for any injunctive relief herein or for continuing the Temporary Restraining Order that is presently in place. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff is not entitled to any preliminary or permanent injunctive relief. Thus, his request for injunctive relief should be **DENIED** and the Temporary Restraining Order (ECF Nos. 16 and 19) presently in place should be **TERMINATED.**

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF No. 27), **DISMISS** the plaintiff's Complaint, as amended (ECF Nos. 1 and 20), **TERMINATE** the Temporary Restraining Order (ECF Nos. 16 and 19), and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff, and to transmit a copy to counsel of record.

August 9, 2018

Dwane L. Tinsley
United States Magistrate Judge